**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Michael Anthony Lee,<br>　　　Plaintiff,<br><br>v.<br><br>Contract Callers, Inc. and<br>McGaughey, Reber & Associates, Inc.<br>a/k/a and d/b/a Diversified Credit Systems,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File No.:<br><br><br><br>**COMPLAINT**<br>**WITH JURY TRIAL DEMAND** |

## PRELIMINARY STATEMENT

Consumers in bankruptcy, like Plaintiff, continue to actively participate in the credit markets while their reorganizations are pending. Motions to approve the incursion of new debt for a variety of purposes are common, as is the granting of such motions by the Bankruptcy Court. Accordingly, compliance with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and accurate credit reporting is as important for these consumers as it is for any other. This action for damages is based on Defendants' false communications to third-parties, in furtherance of their efforts to collect consumer debts from Plaintiff, in violation of the FDCPA.

1

## PARTIES

1.    Plaintiff, Michael Anthony Lee, is a natural person who resides in Dekalb County, Georgia.

2.    Plaintiff is allegedly obligated to pay a consumer debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

3.    Defendant, Contract Callers, Inc. (hereinafter "Contract Callers"), is a corporation formed under the laws of the State of Georgia. Contract Callers may be served with process via its registered agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092-2924.

4.    Contract Callers uses interstate commerce and/or mail in its business. The principal purpose of Contract Callers' business is the collection of consumer debts. Contract Callers also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Contract Callers is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

5.    Defendant, McGaughey, Reber & Associates, Inc. a/k/a and d/b/a Diversified Credit Systems (hereinafter "Diversified"), is a corporation formed under the laws of the State of Texas. Diversified may be served with process via its

2

registered agent, M. S. McGaughey, at 2200 Jahan Trail, Longview, Texas 75604-2521.

6. Diversified uses interstate commerce and/or mail in its business. The principal purpose of Diversified's business is the collection of consumer debts. Diversified also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Diversified is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., claims, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

8. This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants frequently and routinely conduct business in the State of Georgia, including the conduct complained of herein.

9. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in

the Atlanta Division because one or more Defendants maintain agents for service of process within the Atlanta Division.

## **Factual Allegations Derived from Plaintiff's Bankruptcy Case**

10.    On January 31, 2018, Plaintiff filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 18-10181 (the "Bankruptcy Case").

11.    In Schedule F of his Bankruptcy Petition, Plaintiff listed Contract Callers as having an unsecured claim in the amount of $134.00 (the "Contract Callers Debt").

12.    Also in Schedule F of his Bankruptcy Petition, Plaintiff listed Diversified as having an unsecured claim in the amount of $25.00 (the "Diversified Debt").

13.    On February 3, 2018, Defendants were served with Notice of the Plaintiff's Bankruptcy Case and their inclusion as a creditors by the Bankruptcy Noticing Center. Copies of the relevant portions of the Notice as served by the Bankruptcy Noticing Center appear as follows:

```
21298737      +Associated Credit Union,   6251 Crooked Creek Road,   PO Box 923028,   Norcross, GA 30010-3028
21298741      +CCI/Contract Callers Inc,   PO Box 3000,   Augusta, GA 30914-3000
21298740      +Carmax Auto Finance,   Attn: Bankruptcy Department,   PO Box 440609,   Kennesaw, GA 30160-9511
```

```
21298746      +EDI: RCSFNBMARIN.COM Feb 01 2018 21:43:00    Credit One Bank Na,   PO Box 98873,
              Las Vegas, NV 89193-8873
21298747      +E-mail/Text: KGRAUGNARD@DCSCOLLECT.COM Feb 02 2018 01:01:59    Diversified Credit Sys,
              Attention: Bankruptcy Department,   PO Box 3424,   Longview, TX 75606-3424
21298748      +E-mail/Text: bknotice@ercbpo.com Feb 02 2018 00:58:42    ERC/Enhanced Recovery Corp,
              Attn: Bankruptcy,   8014 Bayberry Rd,   Jacksonville, FL 32256-7412
```

14.     On July 14, 2018, Plaintiff filed his Chapter 13 Plan in accordance with 11 U.S.C. § 1322, reforming any pre-existing contracts with Defendants and setting forth his proposed treatment of the  Contract Callers Debt and the Diversified Debt (collectively, the "Debts"), including detailed payment terms.

15.     Plaintiff's Plan provided, in part, that Defendants' allowed claims would be paid through the Chapter 13 Trustee and that no payments would be forthcoming from any other source.

16.     On August 16, 2018, Plaintiff's Plan was confirmed and became *res judicata* as to Plaintiff and Defendants.

17.     Defendants were served with copies of the Confirmation Order on August 18, 2018, by the Bankruptcy Noticing Center.

18.     Copies of the relevant portions of the Notice of Confirmation as served by the Bankruptcy Noticing Center appear as follows:

```
cr*           ++JEFFERSON CAPITAL SYSTEMS LLC,   PO BOX 7999,   SAINT CLOUD MN 56302-7999
              (address filed with court: Jefferson Capital Systems LLC,   PO Box 7999,
              St Cloud, MN  56302-9617)
21298741      ##+CCI/Contract Callers Inc,   PO Box 3000,   Augusta, GA 30914-3000
```

```
21298746      +E-mail/PDF: creditonebknotifications@resurgent.com Aug 16 2018 22:07:27     Credit One Bank Na,
              PO Box 98873,    Las Vegas, NV 89193-8873
21298747      +E-mail/Text: KGRAUGNARD@DCSCOLLECT.COM Aug 16 2018 22:03:34     Diversified Credit Sys,
              Attention: Bankruptcy Department,   PO Box 3424,   Longview, TX 75606-3424
21298748      +E-mail/Text: bknotice@ercbpo.com Aug 16 2018 22:01:41     ERC/Enhanced Recovery Corp,
              Attn: Bankruptcy,   8014 Bayberry Rd,   Jacksonville, FL 22556-7412
```

19.   The Bankruptcy Case is currently pending, and Plaintiff continues to substantially perform under the terms of his Confirmed Plan.

**Factual Allegations Pertinent to CDIA and Metro 2 Reporting Standards**

20.   The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. *See, http://www.cdiaonline.org/about.cfm.*

21.   The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and

state legislative affairs, public relations, education, and the promulgation of industry standards.

22.   Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

23.   To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

24.   The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

25.   Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

26.   In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance

requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

27.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA.  Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

28.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

29.     It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

30.     15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

31.     Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that

"will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "<u>All</u> accounts <u>must</u> be reported on a monthly basis." (Emphasis added.) *Id.*

32.    Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

33.    The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

34.    The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score, can create a false impression of a consumer's debt-to-income ratio, and, as here, create a false impression as to what debts are included, and excluded, from a bankruptcy case.

35.    At all times relevant hereto Defendants warranted and/or represented to Equifax, Experian, and TransUnion that they had adopted and implemented the Metro 2 format for their reporting of consumer data and would otherwise comply

with Metro 2 and CDIA guidelines in their reporting of consumer information. Defendants have, at all times relevant hereto, incorporated the Metro 2 format for reporting consumer information into their own internal policies and procedures.

36. Defendants have actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendants, assume Defendants' compliance with Metro 2 standards in reporting consumer information.

37. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

38. As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

39. In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise, the

information contained in the resulting consumer reports is not consistent or uniform and is subject to gross misinterpretation by users of consumer reports.

### Factual Allegations Derived from Reporting to Equifax

40.    On or about January 22, 2019, Plaintiff obtained a copy of his consumer report as published by Equifax.

41.    That report contained erroneous information as provided by Contract Callers and as published and reported by Equifax.

42.    Specifically, the report shows the status of the Contract Callers Debt as in collections, with a balance of $134.00 and no disclosure of the fact that the account is included in a pending Bankruptcy Case.

43.    The relevant portion of the Contract Callers tradeline appeared in the January 22, 2019, Equifax report as follows:

| | | | |
|---|---|---|---|
| Collection Agency | CONTRACT CALLERS, INC. | Balance Date | Jan 18, 2019 |
| Original Creditor Name | GAS SOUTH | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Jun 09, 2016 | Account Number | xxxxxx 69 |
| Original Amount Owed | $134 | Creditor Classification | Utilities |
| Amount | $134 | Last Payment Date | |
| Status Date | Jan 18, 2019 | Date of First Delinquency | Sep 21, 2015 |
| Status | UNPAID | | |

**Comments**

**Contact**

CONTRACT CALLERS, INC.
501 GREENE STREET
AUGUSTA, GA  30901
1-800-288-1179

(Remaining portion of tradeline omitted.)

44.    Because the Contract Callers Debt is included in Plaintiff's Bankruptcy Case and that disclosure was withheld by Contract Callers, its communication regarding the status of the Contract Callers Debt to third-parties as described herein was both false and misleading.

45.    Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Contract Callers. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

46.    The false and misleading information reported by Contract Callers to Equifax was material in that a viewer of the report would reasonably conclude that

the Contract Callers Debt was not included in Plaintiff's Bankruptcy Case and that Plaintiff is subject to continued collection activity, including legal process.

47.    The false report made by Contract Callers to Equifax was in furtherance of its efforts to collect its Debt from Plaintiff.

48.    Upon information and belief, the false and misleading information reported by Contract Callers has been re-published to third-parties reviewing Plaintiff's Equifax credit file.

### Factual Allegations Derived from Reporting to Experian

49.    On or about January 22, 2019, Plaintiff obtained a copy of his consumer report as published by Experian.

50.    That report contained erroneous information as provided by Contract Callers and as published and reported by Experian.

51.    Specifically, the report shows the status of the Contract Callers Debt as in collections, with a past due balance of $134.00 and no disclosure of the fact that the account is included in a pending Bankruptcy Case.

52.    The relevant portion of the Contract Callers tradeline appeared in the January 22, 2019, Experian report as follows:

| CONTRACT CALLERS | | | Potentially Negative ⚠ |
|---|---|---|---|
| Account Name | CONTRACT CALLERS | Balance | $134 |
| Account Number | 272293XX | Balance Updated | 01/01/2019 |
| Account Type | Collection | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $0 |
| Date Opened | 06/09/2016 | Original Balance | $134 |
| Status | Collection account. $134 past | Highest Balance | $0 |
| | due as of Jan 2019. | Terms | 1 Months |
| Status Updated | 01/01/2019 | On Record Until | Jun 2022 |

(Remaining portion of tradeline omitted.)

53.   The January 22, 2019, Equifax report also contained erroneous information as provided by Diversified and as published and reported by Experian.

54.    Specifically, the report shows the status of the Diversified Debt as in collections, with a past due balance of $25.00 and no disclosure of the fact that the account is included in a pending Bankruptcy Case.

55.   The relevant portion of the Diversified tradeline appeared in the January 22, 2019, Experian report as follows:

14

| DIVERSIFIED CREDIT SYST | | | Potentially Negative ⚠ |
|---|---|---|---|
| Account Name | DIVERSIFIED CREDIT SYST | Balance | $25 |
| Account Number | 262655X | Balance Updated | 09/20/2018 |
| Account Type | Collection | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $0 |
| Date Opened | 10/26/2016 | Original Balance | $25 |
| Status | Collection account. $25 past | Highest Balance | $0 |
| | due as of Sep 2018. | Terms | 1 Months |
| Status Updated | 09/20/2018 | On Record Until | Jan 2023 |

(Remaining portion of tradeline omitted.)

56.    Because the Debts are included in Plaintiff's Bankruptcy Case and that disclosure was withheld by Defendants, their communications regarding the status of the Debts to third-parties as described herein was both false and misleading.

57.    Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendants. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

58.    The false and misleading information reported by Defendants to Experian was material in that a viewer of the report would reasonably conclude that the Debts being collected by Defendants were not included in Plaintiff's Bankruptcy

Case and that Plaintiff is subject to continued collection activity, including legal process.

59.   The false reports made by Defendants to Experian were in furtherance of their efforts to collect their Debts from Plaintiff.

60.   Upon information and belief, the false and misleading information reported by Defendants has been re-published to third-parties reviewing Plaintiff's Experian credit file.

**Factual Allegations Derived from Reporting to TransUnion**

61.   On or about January 22, 2019, Plaintiff obtained a copy of his consumer report as published by TransUnion.

62.    That report contained erroneous information as provided by Contract Callers and as published and reported by TransUnion.

63.    Specifically, the report shows the status of the Contract Callers Debt as in collections, with a past due balance of $134.00 and no disclosure of the fact that the account is included in a pending Bankruptcy Case.

64.   The relevant portion of the Contract Callers tradeline appeared in the January 22, 2019, TransUnion report as follows:

**CONTRACT CALLERS INC  #2722\*\*\*\***
501 GREEN STREET3RD FLOOR SUITE 302
AUGUSTA, GA 30901
(866) 891-0407

| Placed for collection: | 06/09/2016 | Balance: | $134 | Pay Status: | >In Collection< |
| Responsibility: | Individual Account | Date Updated: | 01/18/2019 | | |
| Account Type: | Open Account | Original Amount: | $134 | | |
| Loan Type: | COLLECTION AGENCY/ATTORNEY | Original Creditor: | GAS SOUTH (Utilities) | | |
| | | Past Due: | >$134< | | |

(Remaining portion of tradeline omitted.)

65.   Because the Contract Callers Debt is included in Plaintiff's Bankruptcy Case and that disclosure was withheld by Contract Callers, its communication regarding the status of the Contract Callers Debt to third-parties as described herein was both false and misleading.

66.   Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Contract Callers. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

67.   The false and misleading information reported by Contract Callers to TransUnion was material in that a viewer of the report would reasonably conclude that the Contract Callers Debt was not included in Plaintiff's Bankruptcy Case and that Plaintiff is subject to continued collection activity, including legal process.

68. The false report made by Contract Callers to TransUnion was in furtherance of its efforts to collect its Debt from Plaintiff.

69. Upon information and belief, the false and misleading information reported by Contract Callers has been re-published to third-parties reviewing Plaintiff's TransUnion credit file.

## Damages

70. Defendants had actual notice that the information they were reporting regarding Plaintiff to the various credit reporting agencies was false, deceptive, and misleading.

71. Accordingly, Defendants' conduct was willful.

72. As a result of Defendants' willful actions and omissions, Plaintiff is eligible for statutory damages.

73. Additionally, as a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Defendants' wrongful representations, frustration and anxiety as a result of the knowledge that Defendants are pursuing its collection strategy despite his Bankruptcy Case, and worry over the repercussions of Defendants' conduct.

74.     As a result of the actions and omissions of Defendants, Plaintiff's actual damages also include the illegitimate suppression of his Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

75.     The false information reported by Defendants creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's future credit-worthiness.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692f
### Contract Callers, Inc.

76.     Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

77.     Contract Callers' provision of false and/or misleading information in connection with its attempts to collect the alleged Debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

78.   Contract Callers' false reporting of the status of the account to third-parties is a material misrepresentation having the potential to cause significant damage to the Plaintiff if unchallenged.

79.   Contract Callers' failure to disclose critical information regarding the status of the Debt and account being collected that in effect creates a false and negative impression regarding Plaintiff's effective obligation is an unfair practice and in violation of 15 U.S.C. § 1692f.

80.   As a result of Contract Callers' violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is, therefore, entitled to recover actual damages under 15 U.S.C. § 1692k.

81.   Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Contract Callers $1,000.00 in statutory damages and reasonable attorney's fees and costs.

## COUNT II

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692f
### McGaughey, Reber & Associates, Inc.
### a/k/a and d/b/a Diversified Credit Systems

82.    Plaintiff incorporates by reference paragraphs 1 through 75 as though fully stated herein.

83.    Diversified's provision of false and/or misleading information in connection with its attempts to collect the alleged Debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

84.    Diversified's false reporting of the status of the account to third-parties is a material misrepresentation having the potential to cause significant damage to the Plaintiff if unchallenged.

85.    Diversified's failure to disclose critical information regarding the status of the Debt and account being collected that in effect creates a false and negative impression regarding Plaintiff's effective obligation is an unfair practice and in violation of 15 U.S.C. § 1692f.

86.   As a result of Diversified's violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is, therefore, entitled to recover actual damages under 15 U.S.C. § 1692k.

87.   Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Diversified $1,000.00 in statutory damages and reasonable attorney's fees and costs.

## **TRIAL BY JURY**

88.   Plaintiff is entitled to and hereby requests a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1692k; and

d.) Such other and further relief as may be just and proper.

Respectfully submitted this 19th day of April, 2019.

*Signature page follows*

**BERRY & ASSOCIATES**

*/s/ Adam J. Klein*
Adam J. Klein
Georgia Bar No.: 425032
*aklein@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiff's Attorney*